IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| NOEMI TORRES-RONDA and ANGELO RIVERA-LAMBOY<br><br>Plaintiffs<br><br>vs<br><br>JOINT UNDERWRITING ASSOCIATION; CARIBBEAN ALLIANCE INSURANCE COMPANY; CHARTIS INSURANCE COMPANY OF PUERTO RICO; COOPERATIVA DE SEGUROS MULTIPLES DE PUERTO RICO; INTEGRAND ASSURANCE COMPANY; MAPFRE-PRAICO; NATIONAL INSURANCE COMPANY; OPTIMA INSURANCE COMPANY; REAL LEGACY ASSURANCE COMPANY, INC.; ROYAL & SUN ALLIANCE OF PUERTO RICO, INC.; SEGUROS TRIPLE-S PROPIEDAD INC.; UNIVERSAL INSURANCE COMPANY; ALLSTATE INSURANCE COMPANY; GENERAL ACCIDENT INSURANCE COMPANY; NATIONWIDE MUTUAL INSURANCE COMPANY; RAMON L. CRUZ-COLON, in his official capacity as Insurance Commissioner of the Commonwealth of Puerto Rico; RUBEN A. HERNANDEZ-GREGORAT, in his official capacity as Secretary of the Department of Transportation and Public Works; and JESUS F. MENDEZ, in his official capacity as Secretary of the Department of the Treasury of the Commonwealth of Puerto Rico<br><br>Defendants | CIVIL 11-1826CCC |

## CERTIFICATION ORDER

Before the Court is plaintiffs' Motion for Class Certification (**docket entry 17**).[1]

Plaintiffs filed this class action pursuant to the Racketeer Influenced and Corrupt

Organizations Act (RICO).    Plaintiffs are insured motor vehicle owners seeking

---

[1]Defendants presented a Motion to Hold in Abeyance Plaintiffs' Motion to Certify Class Pending Filing and Ruling on Plaintiffs' RICO Statement and Defendants' Response to the Complaint (docket entry 26), which plaintiffs opposed (docket entry 34). After plaintiffs filed their RICO statement, the Court denied the motion as moot (docket entry 81).

CIVIL 11-1826CCC                              2

compensatory and equitable relief against defendants,[2] the Joint Underwriting Association ("JUA") and the individual insurance companies that comprise it, which offer compulsory liability insurance to motor vehicle owners in Puerto Rico.  Plaintiffs have alleged in the complaint that defendants engaged in a scheme to defraud them, through a pattern of racketeering conduct, which resulted in plaintiffs suffering monetary losses (docket entry 1).

Specific allegations addressing the scheme to defraud are set forth in Section VII and Counts I and III of the complaint and in plaintiffs' RICO Statement (docket entry 36).  As described therein, it is alleged that defendants' billing for the compulsory motor vehicle liability insurance coverage to named plaintiffs and putative class members was effectuated through the use of the U.S. mail, that defendant insurers routinely and systematically charged plaintiffs, as part of the annual insurance premiums, costs for brokerage services and issuance of policies that defendants knew were not going to be incurred, and that, thereafter, the insurer defendants routinely and systematically failed to reimburse plaintiffs for the premiums charged in excess of the costs spent and services rendered; and instead, kept such funds.  Defendants purportedly achieved this through the standardized practices described in the complaint and the RICO Statement.  Plaintiffs are not asking this Court to modify the compulsory insurance premium rates established by the Legislature.  Their request is that defendants reimburse them the portion of the premium they paid for those costs and services that were not expended, pursuant to the Puerto Rico Insurance Code, 26 LPRA §§ 2716(2) and (3),[3] and as established by such uniform premium rates and the

---

[2]Ramón L. Cruz-Colón, Rubén A. Hernández-Gregorat and Jesús F. Méndez , in their official capacities, and IMS Insurance Company of Puerto Rico (identified as General Accident Insurance Company) have been dismissed as defendants.  See Partial Judgments, docket entries 79 and 80.

[3]Section 2716 provides, in pertinent parts:

(2) No person shall collect as a premium or charge for insurance any sum in  excess of the amount actually expended or in due course to be

CIVIL 11-1826CCC                                3

formula for distribution of the premium-dollar approved by the Insurance Commissioner. Plaintiffs further allege that, to their detriment,  the JUA fraudulently transferred the illegal proceeds gained from the scheme to defraud to a financial institution in Chicago, Illinois, as described in Count II.  These transfers were done through interstate wires.

        The Court has a clear understanding of the factual controversies and legal issues raised in this action from the well-pleaded facts that have been alleged with particularity in the complaint, together with the legal arguments raised by plaintiffs in support of their claims in the RICO Statement (docket entry 36), as amplified in the Motion for Class Certification (docket entry 17).  Therefore, we certify the class at this stage without delay.  See In re Pharmaceutical Industry Average Wholesale Price Litig., 588 F.3d 24, 40 (1st Cir. Mass. 2009); Fed. R. Civ. P. 23(c)(1)(A).

I.      **RULE 23 FINDINGS**

        Rule 23(c)(1) of the Fed. R. Civ. P. directs that: "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  The  inquiry is limited only to whether the requirements of Rule 23 have been met, and does not extend to the case's underlying

---

expended for insurance applicable to the subject on account of which the premium was collected or charged.

(3) Any sum collected as a premium or charge for insurance in excess of the amount actually expended for insurance . . . applicable to the subject on account of which the premium or charge was collected shall be returned to the person entitled thereto within thirty (30) days from the date in which it was requested, and if not requested, within the term of ninety (90) days.

Any person who fails to return said sums within the terms set forth in this subsection shall be bound to pay legal interest on the amount to be returned.

(Official translation)

CIVIL 11-1826CCC                              4

merits. Einsen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974)   Plaintiffs bear the burden of establishing that the Rule 23 prerequisites – numerosity, commonality, typicality and adequate representation – are met. See Smilow v. Southwestern Bell Mobile Systems, Inc., 323 F.3d 32, 38 (1st Cir. 2003) ("to obtain class certification, the plaintiff must establish the four elements of Rule 23(a) and one of several elements of Rule 23(b)").

   **A.   Numerosity**

   Case law suggests that a class numbering in the hundreds sufficiently satisfies the requirement. See e.g. Advertising Specialty National Association v. FTC, 238 F.2d 108, 119 (1st Cir. 1986) (holding that a class of 300 members appears to "fall within the accepted legal test of . . . 'impracticability' . . . ."). While the party instituting the action need not show the exact number of potential members in order to satisfy the numerosity prerequisite, it cannot rely on mere speculation. Collazo v. Calderón, 212 F.R.D. 437, 442 (D.P.R. 2002).

   As per the averments made in the complaint, joinder is clearly not practicable here[4]. Plaintiffs request certification for two subclasses. The first subclass is defined as all private motor vehicle owners in the Commonwealth of Puerto Rico who, in compliance with the Compulsory Motor Vehicle Liability Insurance Act, acquired compulsory insurance during the years 1998 to the present, paying the uniform annual premium of $99. See docket entry 1, ¶ 3.2. The second subclass consists of all commercial motor vehicle owners in the Commonwealth of Puerto Rico who, in compliance with the Compulsory Motor Vehicle Liability Insurance Act, acquired compulsory insurance during the years 1998 to the present, paying the uniform annual premium of $148. Id., ¶ 3.4.

---

   [4]Under substantially similar facts but in a different legal landscape, the First Circuit recently found that a similar action satisfied the elements of Rule 23(a). See García-Rubiera v. Calderón, 570 F.3d 443 (1st Cir. 2009). In that case the Court held that the prerequisites of Rule 23(a) were easily met, finding that the total number of the motor vehicle owners in Puerto Rico who paid both the liability insurance in issue here, and private vehicle insurance, approximately 500,000, "far exceeds the low threshold for numerosity."

CIVIL 11-1826CCC                              5

These class members  are sufficiently numerous and defendants have adequate records to identify all of them. The class include individuals and businesses located throughout Puerto Rico that were injured in their property and business as a direct result of defendants' and the enterprise's scheme to defraud and illegal practices. Id., ¶ 12.10.  The class period extends back to January 1998, approximately thirteen years and seven months prior to the date of the filing of the complaint.  Id., ¶¶ 3.2, 3.4.  The plaintiffs are alleged to consist of approximately 2,400,000 motor vehicle owners.  Id., ¶ 12.3.  A class of this size is so numerous as to render joinder impracticable within the meaning of Rule 23(a)(1).  See Barreras Ruiz v. American Tobacco Co., 180 F.R.D. 194, 197 (D.P.R. 1998).  Joinder is especially impracticable without the mechanism of class notification, and, if individual suits were to be filed, it could seriously affect the Court's resources.  Therefore, the requisites of numerosity and impracticability of joinder are clearly met.  See García-Rubiera, 570 F.3d 443, 460 (1st Cir. 2009).

### B.    Commonality

The commonality requirement of Rule 23(a)(2) requires that there be "questions of law or fact common to the class."[5]  As alleged in the complaint, the overriding issue in this case is whether defendants engaged in a scheme to defraud or otherwise harm plaintiffs through a pattern of racketeering conduct. The alleged scheme to defraud consisted in the following: as part of the annual insurance premium rate, every class member was charged an 8% of the dollar premium as  an "acquisition cost" for services of brokers that defendants knew were not going to be rendered, as well as an amount estimated at 4% of the dollar premium for the "administrative cost" of paper copies of the insurance policies that were never incurred, complaint, Par. 7.4; and thereafter, defendants failed to reimburse class members for such non-incurred costs amounting to 12% of its cost, instead, allegedly

---

[5]This Court has followed the convention of considering this issue along with predominance, which is discussed in further detail  below. See Barreras Ruiz, supra, at 197.

CIVIL 11-1826CCC                                6

embezzling these funds. <u>See</u> docket entry 1, ¶¶ 7.3(b) and (c).  Defendants allegedly did so through a course of conduct that affected the plaintiffs uniformly by its application. <u>Id.</u>, ¶ 12.10.

The alleged common questions of fact and law relevant to defendants' alleged violations of RICO include: whether defendants acted in concert in implementing and continuing a fraudulent scheme designed to charge class members for insurance-related services that they knew were not going to be provided, whether they failed to  reimburse these non-incurred costs as required by law; whether there was a pattern of mail fraud violations; whether there was a conspiracy to violate the mail fraud statute and RICO; whether there was a pattern of wire fraud violations; and, whether the nature and scope of the scheme to defraud continues to be fraudulently concealed.

With respect to commonality, all class members stand in an essentially identical position in that they were allegedly defrauded through a pattern of racketeering conduct in which they were required to pay for services that were not provided and for which they were not reimbursed.  <u>Id.</u>, ¶¶ 7.3(b) and (c).  The commonality element of Rule 23(a)(2)requires plaintiffs to show that there is "at least one question of law or fact common to the class." <u>Collazo</u>, *supra*, at 442.

With respect to both subclasses,  the allegations reflect, *inter alia*:  (1) uniformity in billing procedures; (2) uniformity in the amount of insurance billing per transaction; (3) uniformity in payment process; (4) standardization and automation of billing forms (motor vehicle registrations); (5) computerized and automated billing systems; (6) standard contracts between defendants and plaintiffs; (7) standard orientation and instruction regarding plaintiffs' insurance policies, procedures, and benefits; (8) standardization of insurance benefit amounts; and, (9) same type of harm.  All of this suggests that no meaningful individualized determinations would have to be made and demonstrate

CIVIL 11-1826CCC                              7

commonality in pattern, practice and experience to all class members, regardless of which

particular member presents his/her RICO claim to the Court.

The factual commonality and uniformity place the defendants' alleged pattern and

practice squarely within the cases certifying RICO class actions. For example, in Robinson

v. Fountainhead Title Group Corp., 257 F.R.D. 92, 94 (D. Md. 2009), the Court manifested

the following in certifying a RICO class action:

> [T]he majority of the liability questions with regard to Plaintiff's RICO claims do not require inquiry into any individual transactions or file and are identical regardless of which class member would be presenting his or her RICO claim. For example, . . . whether the Defendants were part of an association-in-fact enterprise and whether Defendants operated their scheme continuously over an extended period of time are questions common to Plaintiff and all class members. The alleged scheme to defraud, if proven, operated in the same manner with regard to all customers and thus, liability for operating the scheme will flow from class-wide common proof.

In a similar fashion, in certifying a RICO class action in the case of Heastie v.

Community Bank of Greater Peoria, 125 F.R.D. 669, 674-675 (N.D. Ill. 1989), the Court

reasoned:

> In this case the issues involved in establishing a RICO violation are all common. Specifically, it will be necessary to determine whether [Defendant] was involved in any racketeering activity, . . . . [Plaintiff] contends that [Defendant] and various [others] entered the scheme . . ., that this scheme was a scheme or artifice to defraud under the mail fraud statute, 18 U.S.C. § 1341 (1982), that the mails were used on multiple occasions in this scheme, and that these acts of mail fraud constituted racketeering under § 1961(1). By the terms of the mail fraud statute, what is important is devising or intending to devise a scheme to defraud, and that depends only on the defendant . . . . It follows that a scheme to defraud will violate the statute, no matter the characteristics of the scheme's intended victims. We conclude, therefore, that the existence of racketeering activity is a common question of law and fact.
>
> Likewise, the other elements necessary for a RICO violation are also common issues. First, the existence of a pattern of racketeering activity . . . depends on the actions of [Defendant] and its purported conspirators, not on the consumers allegedly victimized by their scheme. Similarly, the plaintiffs will need to show that [Defendants] have participated in an "enterprise." . . . [O]bviously, this does not depend on any class plaintiffs. The same is true for the last issue, whether these enterprises affect interstate commerce.
>
> In short, the question of whether there has been a violation of RICO will turn on common questions of law and fact, and thus the requirement of

CIVIL 11-1826CCC                              8

> Rule 23(a)(2) is satisfied . . . .  Moreover, the individual questions of injury and
> damages seem relatively easy to resolve in this case.

(Citations omitted).   Likewise, in the case of <u>McMahon Books, Inc. v. Willow Grove</u>

<u>Associates</u>, 108 F.R.D. 32, 38-39 (E.D. Pa. 1985), the Court concluded that the RICO class

action complaint presented significant common issues of law and fact:

> The RICO counts present significant common issues of fact and law because
> many of the elements of RICO civil actions focus on the conduct of the
> defendants. Plaintiffs claim that a fraudulent scheme by the defendants injured
> each member of plaintiffs' class . . . .  In a case such as this, where a number
> of plaintiffs claim injury from a single fraudulent scheme allegedly constituting
> racketeering activity on the part of the defendants, each of the plaintiffs' claims
> will focus on defendants' conduct to establish a violation.

The same reasoning of the courts in these cases applies herein.

Lastly, individualized issues such as state of mind and reliance that have caused the

courts to deny class certification of other RICO cases are not present here, where the

plaintiffs are proceeding on nearly identical footing , given the mandatory statutory obligation

to refund set forth in  the Puerto Rico Insurance Code.  The commonality present here

makes certification appropriate.

### C.    Typicality

The third requirement for class certification under Rule 23(a) is that "the claims or

defenses of the representative parties are typical of the claims or defenses of the class."

Rule 23(a)(3).  "Typicality determines whether a sufficient relationship exists between the

injury to the named plaintiff and the conduct affecting the class, so that the court may

properly attribute a collective nature to the challenged conduct.  Thus, a plaintiff's claim is

typical if it arises from the same event or practice or course of conduct that gives rise to the

claims of other class members, and if his or her claims are based on the same legal theory."

<u>In re Pharmaceutical Industry Average Wholesale Price Litigation</u>, 2011 U.S. Dist.

LEXIS 100812 (D. Mass. 2011).

In actions under RICO, "the typicality requirement is satisfied if the claims of the class

representative and the class arise from the same scheme by the defendant to defraud the

class members." <u>Moore's Federal Practice</u>, § 23.24[8][d].  Again, the typicality requirement is met here because the named plaintiffs' claims arise from the same conduct, that is, defendants' alleged fraudulent scheme, as the claims of the class members and are based on identical legal theories.  A class should be certified where, as here, the central allegations of each individual class member arise from the same operative facts and where the facts on which the named plaintiffs will rely are similar to those on which the other class members will rely.  <u>See</u> <u>Robidoux v. Celani</u>, 987 F.2d 931, 936 (2nd Cir. 1993); <u>see also</u> <u>In re School Asbestos Litigation</u>, 789 F.2d 996, 1000 (3rd Cir. 1986) (typicality satisfied when "the plaintiffs' theories of liability were harmonious, and the named plaintiffs stood in a position similar to other members of the class"); 1 Albert Conte & Herbert B. Newberg, <u>Newberg on Class Actions</u>, § 3.13 (4th Ed. 2002) (the typicality requirement is usually met "when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiffs and the class sought to be represented").

        As the class allegations show, class members assert the same defendants' conduct, the same underlying events, the same injury , and will use the same legal arguments to prove liability.  <u>See</u> docket entry 1, ¶¶ 3.2 to 3.5 (uniform class definitions), ¶¶ 12.12 to 12.14 (claims typical), ¶ 12.15 (same damage), ¶¶ 12.16, 12.17 (common issues of law and fact).  Thus, plaintiffs' claims are typical of those of the class.

        In accordance with <u>Barreras Ruiz</u>, *supra*, at 197, the identity of class members is either known or readily ascertainable because each class member has or had a contract with the JUA or the insurer defendants.  Moreover, there are no issues related to "differences between people based on levels of [physical] injury," or allegations of "prospectively injured people."  <u>Id.</u>  There are only injuries that are subject to mathematical calculation or, like the equitable relief requested, claims which have class-wide applicability.  The typicality requirement is also met.  <u>See also</u> <u>García-Rubiera</u>, *supra*, at 460.

CIVIL 11-1826CCC                                    10

### D.    Adequacy of Representation

The representatives' and the class' interests need not be identical; they should, however, share common objectives and legal or factual positions. Under well-settled rules, "[t]he burden is on the defendant to demonstrate that the representation will be inadequate." Sala v. National R.R. Passenger Corp., 120 F.R.D. 494, 498 (E.D. Pa. 1988).

Representative/plaintiffs have no interests with respect to this litigation that conflict with or are antagonistic to those of other class members because the injuries are already manifest and they all seek recovery for the same harm.  See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."). Representative/ plaintiffs will necessarily advance and protect the interests of all other class members. Moreover, "[a]bsent any conflict between the interests of the representative and other [members of the class], and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed." In re Playmobil Antitrust Litig., 35 F. Supp. 2d, at 243, following Guarantee Ins. Agency Co. v. Mid-Continental Realty Corp., 57 F.R.D. 555, 565 (N.D. Ill. 1972).

Having found that all Rule 23a) requirements have been met, we now turn to compliance with Rule 23(b) criteria.

## II.    THE REQUIREMENTS OF RULE 23(B) ARE ALSO SATISFIED

Rule 23(b) provides that a class action may be maintained if Rule 23(a) is satisfied and one of the conditions set forth in subsections (b)(1)-(3) is met. We find that plaintiffs have fully complied with Rule23(b)(3). "It should be noted that class certification under Rule 23(b)(3) was 'designed primarily to allow the vindication of rights in cases where the monetary amount at stake would not provide adequate incentive for any individual to bring a solo action.'" Bacon v. Honda of Am. Mfg., Inc., 205 F.R.D. 466, 486 (S.D. Ohio 2001) (citation omitted), followed in Abby v. City of Detroit, 218 F.R.D. 544, 549 (E.D. Mich. 2003).

CIVIL 11-1826CCC                                11

"Rule 23(b)(3) added to the complex-litigation arsenal class actions for damages designed to secure judgments binding all class members save those who affirmatively elected to be excluded.  Rule 23(b)(3) 'opt out' class actions superseded the former 'spurious' class action, so characterized because it generally functioned as a permissive joinder ('opt in') device."  Amchem Prods., *supra*, at 614-615 (citations omitted).

Rule 23(b)(3) provides that a class should be certified when questions of law or fact common to the members of the class predominate over any questions affecting individual members and that a class action is superior to other available methods for a fair and efficient adjudication of the controversy. Matters pertinent to this finding include: (1) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.

As a threshold matter, the **issue of predominance** overlaps with the issue of commonality, as noted in Barreras Ruiz.  This action does not involve individual questions of fact or law since defendants' conduct operated in the same manner with regard to all vehicle owners and liability would be established by class-wide common proof. See Heastie, *supra*, at 675 (where, in a RICO class action, the court considered the commonality and predominance requirements together to conclude that the common liability issues predominated over the issues which could affect only individual members).

Where defendants allegedly engaged in uniform fraud applicable to the entire class, issues of law and fact involved in making out a violation of Section 1962 are common to all plaintiffs' claims and predominate over potential individual issues.  See e.g. McMahon Books, Inc. v. Willow Grove Associates, 108 F.R.D. 32, 39-40 (B.D. Pa. 1985) (In order to prevail on their RICO claims, plaintiffs must establish a course of conduct by

defendants falling within the activity prohibited by the act, a burden that involves significant common issues, which predominate over individual issues).  Here defendants allegedly engaged in overall uniform,  standardized practices that affected class members by the claimed loss of reimbursement of non-incurred costs and services.  Defendants purportedly established billing procedures that did not vary.  The gist of the harm, as alleged throughout the complaint, is economic in that plaintiffs were not reimbursed the monies they paid for non-incurred costs and services amounting to 12% of the annual amount.

"The Rule 23 (b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Products, Inc., 521 U.S., at 623. See also Cohen v. District of Columbia National Bank, 59 F.R.D. 84, 90 (D.D.C. 1972) ("Those questions which have already been shown to be common to the . . . claim are also predominant because they constitute the central substantive issues in this case."); In re Playmobil Antitrust Litig., 35 F. Supp. 2d, at 245 ("The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions to render the class action valueless.").

**A superiority finding**, pursuant to Barreras Ruiz, *supra*, at 197-199, must be supported by "maturity," "efficiency and manageability," and the concept of "negative value." RICO is a mature legal theory, unlike the novel tort theories attempted in Barreras Ruiz. This lawsuit is manageable as a class action for its members are identifiable, their injuries are fixed, not "fluid", and they are all located in Puerto Rico).  Class certification is also the most efficient way to resolve the disputes since the alternative would consist of hundreds of individual trials. As to the negative value factor of the superiority test, the litigation costs would be such as to deter individual plaintiffs from seeking relief. Insofar as both sub-classes have alleged denial of partial reimbursements based on defendants' standardized practices, any computation of class damages would not require individualized evidence.  Amchem Products, Inc., 521 U.S., at 617 (citing Mace v. Van Ru Credit Corp., 109 F.3d 338, 344

CIVIL 11-1826CCC                              13

(7th Cir. 1997)).  This same principle was also articulated in <u>Escott v. Barchris Construction</u>

<u>Corp.</u>, 340 F.2d 731,733 (2nd Cir. 1965), as follows:

> In our complex modern economic system where a single harmful act may
> result in damages to a great many people there is a particular need for the
> representative action as a device for vindicating claims which, taken
> individually, are too small to justify legal action but which are of significant size
> if taken as a group. In a situation where we depend on individual initiative,
> particularly the initiative of lawyers, for the assertion of rights, there must be
> a practical method for combining these small claims, and the representative
> action provides that method . . . .  **The usefulness of the representative
> action as a device for the aggregation of small claims is persuasive of
> the necessity of a liberal construction of Rule 23**.

(Emphasis ours)

  Likewise, in <u>Cohen v. District of Columbia Nat'l Bank</u>, the Court stated:

> The class action is obviously a superior method of adjudicating a case where
> a large number of [claimants] with singularly small claims seek relief from
> alleged violations of the . . . laws but where no one person is damaged to the
> degree which warrants an individual lawsuit against the [defendant]. The
> instant case exemplifies the underlying purpose of Rule 23, which is to open
> a path to the courthouse that would otherwise be closed to hundreds of people
> who seek redress for statutory violations.

59 F.R.D., at 90.[6]

    The Court finds that the Rule 23(b)(3) requirements for class certification are met as

to both representative/plaintiffs. The Motion for Class Certification. **(docket entry 17)**.)is

GRANTED.

**III.    CLASS DEFINED**

    A.      "An order that certifies a class action must define the class."  Rule 23(c)(1)(B).

The Court defines the certified class as follows:

> All motor vehicle owners in the Commonwealth of Puerto Rico who in
> compliance with the Compulsory Motor Vehicle Liability Insurance Act, 26
> LPRA ss8051 et seq., acquired  compulsory insurance during the years 1998
> until adjudication of this lawsuit.

─────────────────────

    [6]<u>See also Ballard v. Blue Shield of Southern W. Va., Inc.</u>, 543 F.2d 1075, 1080
(4th Cir. 1976) (Without aggregation as a class, "discovery would be repetitive and unduly
expensive if the parties engage in individual suits.").

CIVIL 11-1826CCC                                    14

Included in the class are all private motor vehicle owners in the Commonwealth of Puerto Rico, who, in compliance with the Compulsory Motor Vehicle Liability Insurance Act, acquired compulsory insurance during such period, paying the uniform annual premium of $99.00; and, all commercial motor vehicle owners in the Commonwealth of Puerto Rico, who, in compliance with the Compulsory Motor Vehicle Liability Insurance Act, acquired compulsory insurance during that same period, paying the uniform annual premium of $148.00.

Excluded from the class are defendants, defendants' employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; the Judge and judicial officers and their immediate family members and associated court staff assigned to this case; and, all persons within the third degree of relationship to any such persons.

B.      CLASS CLAIMS are defined in the RICO statement (docket entry 36) and at pages 2 and 3 of this order.

## IV.    CLASS COUNSEL DESIGNATION

The Court finds that Eric M. Quetglas-Jordán, José F. Quetglas and Pedro R. Vázquez, III meet the criteria set forth in Rule 23(g)(1)(A)(i-iv).  Accordingly, the Court hereby appoints said attorneys to act as class counsel.

## V.    NOTICE REQUIREMENT

Having certified the class under Rule 23(b)(3), the Court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  Therefore, notice to the class must clearly and concisely state the following in plain, easily understood language:

(1)    the nature of the action;

(2)    the definition of the class certified;

(3)    the class claims, issues, or defenses;

(4)    that a class member may enter an appearance through an attorney if the member so desires;

(5)    that the court will exclude from the class any member who requests exclusion;

(6)    the time and manner for requesting exclusion; and

CIVIL 11-1826CCC                    15

    (7)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. Rule Civ. Proc. R. 23(c)(2).

    WHEREFORE, the Court orders the parties to coordinate a meeting within twenty (20) days following the entry of this Order to:

    i)    reach an agreement as to the text of the proposed Notice to be sent to the class, in compliance with Rule 23(c)(2)(B);

    ii)    discuss the manner in which the members of the class can be identified, and schedule any discovery that may be required for that specific purpose; and

    iii)    reach an agreement with regards to the manner in which members of the class will receive the class Notice.

    Within ten (10) days after the parties' meeting they shall submit a Joint Report to the Court, informing the results of the same .

    SO ORDERED.

    At San Juan, Puerto Rico, on October 2, 2012.


                               S/CARMEN CONSUELO CEREZO
                               United States District Judge