IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NOEMI TORRES RONDA and ANGELO
RIVERA LAMBOY

Plaintiffs

vs

JOINT UNDERWRITING ASSOCIATION;
CARIBBEAN ALLIANCE INSURANCE
COMPANY; CHARTIS INSURANCE
COMPANY OF PUERTO RICO;
COOPERATIVA DE SEGUROS
MULTIPLES DE PUERTO RICO;
INTEGRAND ASSURANCE COMPANY;
MAPFRE-PRAICO; NATIONAL
INSURANCE COMPANY; OPTIMA
INSURANCE COMPANY; REAL LEGACY
ASSURANCE COMPANY, INC.; ROYAL
& SUN ALLIANCE OF PUERTO RICO,
INC.; SEGUROS TRIPLE-S PROPIEDAD
INC.; UNIVERSAL INSURANCE
COMPANY; ALLSTATE INSURANCE
COMPANY; GENERAL ACCIDENT
INSURANCE COMPANY; NATIONWIDE
MUTUAL INSURANCE COMPANY;
RAMON L. CRUZ COLON, in his official
capacity as Insurance Commissioner of
the Commonwealth of Puerto Rico;
RUBEN A. HERNANDEZ GREGORAT, in
his official capacity as Secretary of the
Department of Transportation and Public
Works; and JESUS F. MENDEZ, in his
official capacity as Secretary of the
Department of the Treasury of the
Commonwealth of Puerto Rico

Defendants

CIVIL 11-1826CCC

**OPINION AND ORDER**

On August 19, 2011, plaintiffs filed a Class Action Complaint alleging
violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO")
and Commonwealth law.  The remaining defendants are Joint Underwriting
Association ("JUA"); Cooperativa de Seguros Múltiples de Puerto Rico

CIVIL 11-1826CCC                    2

("Cooperativa"); AIG (formerly known as Chartis Insurance Company of Puerto Rico); Integrand Insurance Company ("Integrand"); MAPFRE; QBE Optima Insurance Company ("Optima"); Real Legacy Assurance Co, Inc. ("Real Legacy"; formerly known as Royal & Sun Alliance of Puerto Rico, Inc.); Seguros Triple S Propiedad, Inc. ("Triple S"); Universal Insurance Company ("Universal"); Allstate Insurance Company ("Allstate"); and CAICO (formerly known as Nationwide Mutual Insurance Company).

Plaintiffs allege that defendants took advantage of Law 253 of 1995, the Compulsory Motor Vehicle Liability Insurance Act, which requires every motor vehicle owner to buy automobile insurance for a set premium of $99. 26 L.P.R.A. §§ 8051, 8056. Plaintiffs allege that JUA and defendant insurance companies are required by law to refund to purchasers a portion of the premium intended for acquisition and administrative costs that were never expended. Rather than issuing such a refund, plaintiffs allege that the defendants conspired to retain the full premium. The class is composed of all motor vehicle owners in Puerto Rico who purchased compulsory automobile liability insurance from 1998 until the adjudication of this action.

Before the Court is the Joint Motion for Summary Judgment (**d.e. 413**) filed June 18, 2018 filed by defendants JUA, Cooperativa, MAPFRE, Optima, Integrand, Real Legacy, Triple S, Universal, and CAICO ("appearing defendants"); the accompanying Statement of Undisputed Material Facts (d.e. 414) and Joint Memorandum in Support of Motion for Summary Judgment (d.e. 415) filed on June 18, 2018; plaintiffs' Opposition to Joint Motion for Summary Judgment (d.e. 454) filed on August 5, 2019; plaintiffs' Response to Statement of Undisputed Material Facts and Statement of Additional Material

CIVIL 11-1826CCC                    3

Facts (d.e. 455) filed on August 5, 2019; appearing defendants' Reply to Response (d.e. 462) filed on September 11, 2019; and appearing defendants' Reply to Opposition to Joint Motion for Summary Judgment (d.e. 464) filed on September 11, 2019.  Also before the Court is an earlier Motion for Summary Judgment (**d.e. 229**), Brief in Support (d.e. 230); and Statement of Undisputed Material Facts (d.e. 231) filed on behalf of all defendants on November 14, 2014; plaintiffs' Opposition (d.e. 280) and Response to Statement of Undisputed Material Facts (d.e. 284) filed March 10, 2015; defendants' Reply (d.e. 325) filed May 8, 2015; and plaintiffs' Sur-Reply (d.e. 360) filed July 27, 2015.

## RELEVANT UNDISPUTED FACTS

1.     On December 27, 1995, Law No. 253 was enacted to create a compulsory third-party fault-based automobile insurance to cover vehicles and to be provided by private insurers to vehicle owners who requested it, except to those vehicle owners rejected pursuant to criteria to be promulgated by the Commissioner of Insurance. (d.e. 280, para. 26).

2.     JUA was created by Law No. 253 with the original main purpose of insuring compulsory liability insurance applicants rejected by private insurers. Law 253 required all private insurers who are licensed or might be licensed in the future to underwrite vehicle insurance to be members of JUA. (d.e. 280, para. 28).

3.     The compulsory liability insurance provided a maximum coverage of $3,000 per accident for a universal single premium of $99 for private

CIVIL 11-1826CCC                    4

passenger vehicles and a universal single rate of $148 for commercial vehicles. (d.e. 280, para. 29).

4.     Law 253's requirement that every vehicle have compulsory liability insurance went into effect on January 1, 1998. (d.e. 280, para. 37).

5.     Law 253 requires that the billing for compulsory insurance premiums be conducted by the Department of Transportation and Public Works ("DTPW") and the Secretary of Treasury.  26 L.P.R.A. § 8052(f).

6.     Law 253 required the Commissioner of Insurance to establish, through regulation:

(a)     the structure and operation of the JUA (after consultation with private insurers); and

(b)     the measures necessary for fair and efficient coordination between compulsory and traditional liability insurance (d.e. 280, para. 39).

7.     In 2000, the Commissioner of Insurance issued Rule LXX for the implementation of the compulsory liability insurance program mandated by Law 253.  (d.e. 280, para. 94).

8.     The certified class in the instant case is as follows:

All motor vehicle owners in the Commonwealth of Puerto Rico who in compliance with the Compulsory Motor Vehicle Liability Insurance Act, 26 LPRA ss8051 et seq., acquired compulsory insurance during the years 1998 until adjudication of this lawsuit.

Included in the class are all private motor vehicle owners in the Commonwealth of Puerto Rico, who, in compliance with the Compulsory Motor Vehicle Liability Insurance Act, acquired insurance during such period, paying the uniform annual premium of $99.00; and, all commercial motor vehicle owners in the Commonwealth of Puerto Rico, who, in compliance with the Compulsory Motor Vehicle Liability Insurance Act, acquired

compulsory insurance during that same period, paying the annual premium of $148.00.

Excluded from the class are defendants, defendants' employees, officers, directors, legal representatives, heirs, successors and wholly or partially owned subsidiaries or affiliated companies; class counsel and their employees; the Judge and judicial officers and their immediate family members and associated court staff assigned to this case; and, all persons within the third degree of relationship to any such persons.

(d.e. 93).

9.      During the relevant time period, JUA sold compulsory liability insurance.  (d.e. 325, para. 268).

10.      During the relevant time period, Cooperativa sold compulsory liability insurance. (d.e. 325, para. 269).

11.      During the relevant time period, Optima sold compulsory liability insurance.  For each client, the company printed an individualized declaration page, attached thereto the wording of the uniform compulsory insurance policy, and delivered this by mail to the insured. Optima utilized authorized brokers, agents and representatives in the sale of the policies and paid them commissions of up to 8% of the premium dollar. (d.e. 325, para. 272).

12.      During the relevant time period, MAPFRE sold compulsory liability insurance.   MAPFRE used authorized brokers to acquire the business and delivered copies of the policy to the insureds.  (d.e. 325, para. 273).

13.      During the relevant time period, Triple-S sold compulsory liability insurance. Triple-S used authorized brokers for the sale of the compulsory insurance and paid them 8% of the premium dollar. Triple-S delivered to each insured an individualized declaration page, which in the back had a summary

CIVIL 11-1826CCC                     6

of the coverage and provides information of its Website, where the full uniform

policy is posted. (d.e. 325, para. 274).

14.   AIG, Allstate, Integrand, Universal, Real Legacy, and CAICO did

not sell compulsory liability insurance during the relevant time period. (d.e. 325,

para. 275-280).


## STANDARD OF REVIEW

The standard applicable to summary judgment motions was summarized

by the Court of Appeals in Johnson v. University of Puerto Rico,

714 F.3d 48, 52 (1st Cir. 2013):

> Summary judgment is appropriate when there is no genuine
> dispute as to any material fact and the moving party is entitled to
> judgment as a matter of law. Fed. R. Civ. P. 56(a); Cox v. Hainey,
> 391 F.3d 25, 29 (1st Cir. 2004).  We look to the pleadings,
> depositions, answers to interrogatories, admissions on file, and any
> affidavits in making the determination.  Thompson [v. Coca-Cola
> Co.], 522 F.3d [168,] at 175 [(1st Cir. 2008)].  A dispute is genuine
> if "the evidence about the fact is such that a reasonable jury could
> resolve the point in favor of the non-moving party."  Id. (quoting
> Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)) (internal
> quotation mark omitted).  A fact is material if it has potential to
> determine the outcome of the litigation. Maymí v. P.R. Ports Auth.,
> 515 F.3d  20, 25 (1st Cir. 2008).

Once a properly supported motion has been presented, where a

nonmovant bears the burden of proof on an issue, the nonmovant must point

to competent evidence and specific facts to defeat summary judgment.

Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London,

637 F.3d 53, 56 (1st Cir. 2011).  The evidence proffered must be "significantly

probative of specific facts," Pérez v. Volvo Car Corp., 247 F.3d 303, 317

(1st Cir. 2001), and the "mere existence of a scintilla of evidence" in support

CIVIL 11-1826CCC                    7

of the nonmovant's position is insufficient, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986).

## RELEVANT LAWS

Racketeer Influenced and Corrupt Organizations Act

A civil RICO suit must allege violations of 18 U.S.C. § 1962(c), which states that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Only a "person injured in his business or property by reason of a violation of [18 U.S.C. §] 1962" has standing to bring a private civil RICO action.  18 U.S.C. § 1964(c).

The definition of "racketeering activity" is found at 18 U.S.C. § 1961(1), and at least two related acts included in such definition are required to establish a pattern.  18 U.S.C. § 1961(5). Included under the definition of racketeering activity is any act which is indictable under 18 U.S.C. § 1341 (mail fraud). There are two elements to mail fraud: "(1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)."  Schmuck v. United States, 489 U.S. 705, 721 n. 10 (1989).

CIVIL 11-1826CCC                    8

Puerto Rico Compulsory Insurance

Law No. 253 of 1995 established a new compulsory automobile insurance system, created JUA, and required all private insurance companies underwriting automobile insurance to become members of JUA. Law No. 253 set the price of compulsory auto insurance at $99, 27 L.P.R.A. § 8056, and provides that the insurance premium is not "refundable,"[1] 26 L.P.R.A. § 8051. Law No. 253 requires the Secretary of the Treasury and the Department of Public Works to collect the insurance premium.  26 L.P.R.A. § 8052(f).  Law No. 253 also granted the Insurance Commissioner the power to issue regulations to implement the compulsory automobile insurance system. In 2000, the Insurance Commissioner enacted Rule LXX, which provides in Article 20(e)(2):

> The excess of the profits of each year over the amounts distributed due to the participation stipulated in this clause will be accrued in a special reserve of the excess that will be used exclusively for the future stabilization of the premiums of the obligatory liability insurance and the future expansion of the services of the same. In no case can the aforementioned excess accrued in said reserve be used for the distribution of the participation in profits that is established in the previous participation.

(d.e. 46-1).


**DISCUSSION**

*I.    Effect of Commonwealth Ruling in Collazo Burgos*

Years into the litigation of this action, a case concerning similar issues regarding the overcharging of compulsory insurance premiums by JUA and private insurance companies was decided by the Court of First Instance, San

---

[1] Prior to a 2009 amendment, the statute read that premiums are not "reimbursable."

CIVIL 11-1826CCC                    9

Juan Part, in <u>Collazo Burgos, María Margarita v. La Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio</u>, Civil Case No. K AC2010-1079.  The trial court's ruling was affirmed by the Court of Appeals.  <u>Collazo Burgos v. La Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio</u>, 2017 WL 6884428, at *1 (P.R. Cir. Nov. 30, 2017).  The outcome of this action depends in part on whether the Court is persuaded by the decision of the Court of Appeals of Puerto Rico in <u>Collazo Burgos</u>.  <u>Id.</u>

The <u>Collazo Burgos</u> plaintiffs alleged violations of Puerto Rico's insurance code and unjust enrichment due to the failure of defendants, JUA and private insurance companies, to refund the portion of the $99 compulsory automobile insurance premium not actually expended by defendants on the costs of providing insurance. On June 6, 2013, Partial Judgment was entered dismissing the case against all private insurance companies by agreement of the parties (d.e. 414-2).  The majority of these companies were dismissed because it was uncontested that they failed to sell any compulsory insurance policy during the relevant period. The remaining private insurance companies were dismissed because, despite selling the policy, they expended the full $99 on expenses related to providing the policy and therefore retained no excess funds.

On April 11, 2017, the Court of First Instance granted summary judgment for the defendants (d.e. 414-6) in <u>Collazo Burgos</u>.  It ruled that any unspent or excess portion of a compulsory insurance premium charged by JUA must be directed to the Special Reserve created by Rule LXX, rather than reimbursed to the buyer of the policy. This decision was affirmed by the Court of Appeals

CIVIL 11-1826CCC                    10

of Puerto Rico, which issued its own Judgment on November 30, 2017 (d.e. 414-7).

The Court of Appeals explained that JUA is restrained by two conflicting laws, Art. 27.160(3) and Law No. 253, and relevant regulations.   First, Art. 27.160(3) of the Insurance Code, passed in 1967, provides that "[any amount charged as a premium or an insurance charge in excess of the amount truly spent for the insurance] must be returned to the person entitled to the same."  26 L.P.R.A. § 2716(3).  In contrast, Law No. 253, which took effect on January 1, 1998, provides that the compulsory automobile insurance premium is not "refundable,"[2] 26 L.P.R.A. § 8051.  Law No. 253 also granted the Insurance Commissioner the power to issue regulations to implement the compulsory automobile insurance system.   In 2000, the Insurance Commissioner enacted Rule LXX, which provides in Article 20(e)(2):

> The excess of the profits of each year over the amounts distributed due to the participation stipulated in this clause will be accrued in a special reserve of the excess that will be used exclusively for the future stabilization of the premiums of the obligatory liability insurance and the future expansion of the services of the same.

(d.e. 46-1).

In determining which of the conflicting statutes is controlling, the Court relied on widely accepted norms of statutory construction. First, the Court noted that the statute and rule barring reimbursement of premiums were passed more recently than the statute mandating reimbursement. Second, the Court looked to the level of specificity of the statutes.  26 L.P.R.A. § 2716(3), which requires premium refunds, is a general provision of the insurance code.

---

[2] Prior to a 2009 amendment, the statute read that premiums are not "reimbursable."

CIVIL 11-1826CCC                    11

However, 26 L.P.R.A. § 8051 and Rule LXX apply solely to the compulsory automobile insurance at issue in this case.  Therefore, the Court of Appeals ruled that 26 L.P.R.A. § 8051, which bars refunds of premiums, and Rule LXX, which requires that excess premiums be placed in a Special Reserve, are controlling.  As a result, the Court of Appeals concluded that premiums paid to purchase compulsory automobile insurance from JUA are not reimbursable as a matter of law.

Plaintiffs encourage the Court to ignore the Collazo Burgos decision because it was issued by the Court of Appeals, rather than the Supreme Court of Puerto Rico.  Appearing defendants ask the Court to find that *res judicata* bars the present suit or, in the alternative, to apply the legal conclusions stated in Collazo Burgos pursuant to the Erie doctrine, see e.g., Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).  Because the Erie doctrine provides sufficient grounds on which to rule, the Court does not address the applicability of *res judicata*.

While the Court is not bound by rulings of the Court of Appeals of Puerto Rico, the Court must give special weight and consideration to its findings of law.  Gonzalez Figueroa v. J.C. Penney of P.R., Inc., 568 F.3d 313, 323 (1st Cir. 2009); Teamcare Infusion Orlando, Inc. v. Humana Health Plans of P.R., Inc., 296 F.Supp. 3d 429, 439 (D.P.R. 2017).  Pursuant to the Erie doctrine, "in the absence of more convincing evidence of what the state law is, [state intermediate court decisions] should be followed by a federal court in deciding a state question."  Fidelity Union Trust Co. v. Field, 311 U.S. 169, 178 (1940).  Thus, an intermediate state court's decision should not be disregarded, unless the federal court is "convinced by other persuasive data

CIVIL 11-1826CCC                    12

that the highest court of the state would decide otherwise." <u>Comm's v. Estate of Bosch</u>, 387 U.S. 456, 465 (1967).  Here, plaintiffs have presented no law or other sources that convince the Court that the Supreme Court of Puerto Rico would decide the issue differently than the Court of Appeals.  The Court is persuaded by and adopts the findings of law in <u>Collazo Burgos</u>.

## II.    Count One

Count One alleges that defendants violated RICO because they "knowingly, intentionally and unlawfully, aided and abetted, and conspired with each other, to devise, or intend to devise the Scheme to Defraud, by which they were to illegally obtain, acquire and maintain control of the refundable payments paid by the Representative Plaintiffs and Class Members, to later illegally keep those assets for their own pecuniary benefit and interest." (d.e. 1).  Plaintiffs allege that they were economically injured by defendants' actions because they are entitled to a refund of a portion of the premiums paid for compulsory liability insurance – specifically, 8% of the premium intended to be used to for acquisition expenses, such as commissions paid to insurance brokers, and 4% of the premium intended to be used for administrative expenses, such as providing paper copies of insurance policies.

RICO claims require at least two related acts of "racketeering activity" as defined in 18 U.S.C. § 961.  Plaintiffs identified the racketeering activity of the defendants as mail fraud under 18 U.S.C. § 1341.  Specifically, plaintiffs allege that:

> [T]he Defendants caused the DTPW to place in the post offices or authorized depositories for mail matter envelopes, containing the motor vehicles licenses or registrations which were thereafter

CIVIL 11-1826CCC                    13

> delivered, by the United States Postal Service, to all motor vehicles
> owners in Puerto Rico, in violation of the Mail Fraud Statute,
> 18 U.S.C. § 1341.  The motor vehicles licenses or registrations
> contained the billing for the annual premium for the compulsory
> insurance policy, which fraudulently included an acquisition cost
> that was never going to be spent, plus an administrative cost that
> was never going to be incurred by the Defendants. Moreover, the
> motor vehicle licenses or registrations fraudulently omitted the
> utterly relevant and essential information that those parts of the
> dollar-premium collected in excess were refundable.

(d.e. 1, p. 33).

Plaintiffs argue three theories of mail fraud: (1) the defendants caused DTPW to mail billing statements for compulsory insurance that failed to inform consumers that parts of the insurance premium were refundable; (2) the defendants caused DTPW to mail billing statements for compulsory insurance that charged acquisition and administrative costs that would not be incurred; (3) JUA failed to place excess premium funds in the Special Reserve created by Rule LXX.

Plaintiffs' first claim, that defendants committed mail fraud by causing DPTW to omit on billing documents that a portion of the premium is refundable, must fail because the conduct that plaintiff identifies as fraudulent is required by law.  The DPTW must bill for compulsory insurance premiums, 26 L.P.R.A. § 8052(f), at a cost of $99.  Nothing in the compulsory insurance statute requires the DTPW to state that any portion of the premium is refundable.  In fact, a statement that the premium is refundable would be in direct conflict with 26 L.P.R.A. § 8051 and Rule LXX, which explicitly state that the premium is not refundable, and with Collazo Burgos, which held that excess premium payments made to JUA must be directed to a Special Reserve rather than refunded to purchasers.  Whether or not defendants influenced the drafting of

CIVIL 11-1826CCC                14

the statute or accompanying regulations in a way that benefitted them, as plaintiffs allege, Law 253 is the law of Puerto Rico, and compliance with its terms cannot constitute mail fraud.

The second claim alleges that defendants committed mail fraud by causing DTPW to mail billing documents charging the full $99 compulsory insurance premium and then failing to refund the portion of the premium not actually spent on acquisition or administrative costs.[3] As to JUA, the holding in Collazo Burgos bars JUA from refunding premium payments as a matter of law. As to the remaining private insurance companies, assuming, *arguendo*, that they are legally required to refund excess premium payments, there is no racketeering activity as required to support a RICO claim. As previously stated, DTPW is required by law to charge a $99 premium, 26 L.P.R.A. § 8056, and compliance with the law cannot constitute mail fraud. There are no facts in dispute which, when viewed in the light most favorably to the plaintiffs, would permit a finding of mail fraud by JUA or the private insurance companies.

The third claim pertains solely to JUA. Plaintiff alleges that JUA has failed to place excess funds in the Special Reserve, as required by Rule LXX (d.e. 46-1). Plaintiff's Complaint does not include this theory; it was raised by plaintiffs for the first time in their Opposition to the Motion for Summary Judgment (d.e. 454). This claim is not obviously related to the mailings by DPTW, which the Court have already found cannot constitute mail fraud. In

---

[3]The parties agree that defendants Optima, MAPFRE, and Triple S sold compulsory insurance during the relevant period, but that they expended up to 8% of the $99 premium on broker fees and provided paper copies of policies to purchasers (d.e. 325, para. 272-74). The parties also agree that defendants AIG, Allstate, Integrand, Universal, Real Legacy and CAICO never sold compulsory insurance policies (d.e. 325, para. 275-80). Accordingly, it appears that plaintiff asserts only that JUA and Cooperativa have retained and failed to refund excess funds.

CIVIL 11-1826CCC                    15

addition, plaintiffs have not alleged that they have been injured in their business or property by JUA's alleged failure to place funds in the Special Reserve.  18 U.S.C. § 1964(c) (injury to business or property is required for standing to bring a civil RICO claim).  This claim must fail under RICO because, assuming, *arguendo*, that JUA has failed to place funds in the Special Reserve, there are no facts in dispute that, when viewed in the light most favorable to plaintiffs, would allow a factfinder to find mail fraud or an injury that would confer plaintiffs standing.

Even accepting plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor, a reasonable trier of fact could not find that mail fraud constituting racketeering activity occurred. Accordingly, plaintiffs' RICO claim fails as a matter of law and summary judgment must be granted in favor of defendants as to Count One.

### III.   Count Two

Count Two alleges that defendant JUA violated 18 U.S.C. § 1962(a) by transmitting racketeering proceeds to a bank outside of Puerto Rico.  As plaintiffs' racketeering claim at Count One has failed, no racketeering proceeds can be established.  Accordingly, summary judgment must be granted in favor of defendants as to Count Two.

### IV.   Count Three

Count Three alleges that all defendants violated 18 U.S.C. § 1562(d) by conspiring to transfer racketeering proceeds as alleged in Count Two.  As plaintiffs' racketeering claim has failed, no racketeering proceeds can be

CIVIL 11-1826CCC                    16

established.   Accordingly, summary judgment must be granted in favor of defendants as to Count Three.


*V.    Count Four*

The Court's jurisdiction in this matter rest upon federal question jurisdiction under 28 U.S.C. § 1331.  Having granted summary judgment in favor of defendants on all federal causes of action, the Court declines to exercise supplemental jurisdiction over plaintiffs' remaining claims under Commonwealth law (d.e. 1, p. 8).


### CONCLUSION

For the foregoing reasons, the Court GRANTS appearing defendants' Joint Motion for Summary Judgment (**d.e. 413**) and all defendants' Motion for Summary Judgment (**d.e. 229**).  Judgment shall be entered by separate order.

SO ORDERED.

At San Juan, Puerto Rico, on September 30, 2019.


S/CARMEN CONSUELO CEREZO
United States District Judge